UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCEL DESEAN PRICE,<br><br>                 Petitioner,<br><br>v.<br><br>SEAN MOORE et al.,<br><br>                 Respondents. | Case No.: 22-cv-775-GPC-KSC<br><br>**REPORT AND RECOMMENDATION FOR AN ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS [Doc. No. 3]** |

Petitioner Marcel Desean Price seeks a writ of habeas corpus challenging a conviction in the Superior Court for the County of San Diego on three counts of attempted murder, three counts of personally using a firearm to commit aggravated assault, and one count of being a felon in possession of a firearm. *See* Doc. No. 3 at 1-2; Doc. No. 8 at 2. Petitioner alleges the trial court erroneously admitted the three following categories of evidence in violation of his due process rights: (1) evidence of petitioner's gang ties; (2) opinion evidence that petitioner was the shooter captured on security camera footage; and (3) evidence related to a witness's reluctance to testify based on a fear of gang retaliation. *See* Doc. No. 3 at 6, 28, 33; Doc. No. 8-1 at 2.

Respondent filed an Answer and an Opposition and lodged the appropriate state court records. Doc. Nos. 8, 9. Petitioner was ordered to file a Traverse no later than January 6, 2023. Doc. No. 7. Petitioner failed to file any Traverse, timely or otherwise. This Court,

having reviewed the record, submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72(d). This Court **RECOMMENDS** the District Court **DENY** the Petition.

## I. STATE COURT TRIAL PROCEEDINGS

This Court will defer to state court findings of fact and presume them correct unless petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Parke v. Raley*, 506 U.S. 20, 35-36 (1992); *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008). Petitioner makes no effort to rebut the presumption of correctness. Accordingly, this Court will recite the facts pertinent to this Petition as set forth in the reasoned opinion of the California Court of Appeal, which describes the facts of the case in detail:

> During the night of June 8, 2018, and the early morning hours of June 9, 2018, Price, a Skyline (also known as East Side) Piru gang member, and three other men, two of whom were associated with the O'Farrell Park gang, were at a North Park bar drinking and socializing when Price and one of his companions, Ted Mercer, got into an altercation and fight with others. Mercer was associated with the O'Farrell Park gang. A security guard heard Mercer say, "Fuck you and Fuck East Side," before the initial punch. Afterwards, Mercer yelled that they had gotten "maxed out," meaning they got beat up or lost the fight. He was injured and angry, feeling that the bouncers had thrown him back into the fight. When the fight was over, security guards would not let Price or Mercer back into the bar. When Price and Mercer tried to reenter, two of the guards grabbed Price and tried to flip him over a railing. Mercer slapped one of the guards and the guard responded by punching him a few times in the face. Price and Mercer finally left the bar with their group, angry about what had happened there. While in the car driving away from the bar, Mercer exchanged calls with [petitioner's co-defendant at trial] Hune using the phone of a friend who was at the bar that night.
>
> At about 2:50 a.m., two of the security guards were standing outside the bar when they heard gunshots. One of the guards was shot in the upper chest area. Witnesses hearing the gunshots saw a black Chrysler 300, later determined to be registered to Hune, speeding down an adjacent street. One witness saw an individual run into the car after the gunshots and described him as an African-American male, five feet nine inches to six feet one inch tall, with a medium build on the slender side, wearing baggy clothes and a dark sweatshirt with a

hood over his head. The man appeared to be shoving something inside his waistband.

San Diego Police Department Detective Andrew Tafoya was assigned to the matter. He contacted the bar's manager and sought out surveillance video from surrounding businesses. He identified the men in the bar video by asking a gang unit detective if she recognized the men from the bar that night, and from that he was able to identify Price and Jordan Bingham. Detective Tafoya also viewed surveillance footage from the bar on June 8 showing Price and his colleagues entering the bar and the fight that ensued. The video showed the clothing and shoes Price was wearing that night. Detective Tafoya obtained surveillance footage from other local businesses that showed a black Chrysler 300 pull up and a male exit the car and commit the shooting, which occurred around 2:52 a.m. The video showed the vehicle pull up at 2:51 a.m. and a man exit the passenger side within 10 seconds. It also showed the first six numbers of the car's license plate, leading to records establishing that the car was Hune's. Detective Tafoya compared still photographs of the surveillance footage from the bar with the other business, and [he] testified based on the similarities in clothing and shoe markings, as well as Price's height, stature and gait, that he believed the male who exited the Chrysler 300 was Price. The detective also obtained a photograph from Jordan Bingham's Facebook page showing Bingham and Price together on June 8, throwing what appeared to be gang signs.

[. . .]

Before trial, when the case was proceeding against both Price and Hune, the People moved to admit evidence of Price's and Hune's gang affiliations and gang culture—specifically, among other things, the significance of June 8 as a day of celebration and the importance of respect— to prove motive, Price and Hune's shared intent, and knowledge. They argued that while motive was not an element of any crime, the gang evidence could be admitted as relevant to that issue and others such as identity and modus operandi. They also argued gang affiliation could be relevant to proving the codefendants' relationship with one another and their involvement in the charged crime. The People argued that the evidence was relevant to help explain why the defendants would react so violently to a "seemingly innocuous situation at a bar"; that in the present case, "there is no other explanation for the crime but the fact that Price felt the need to retaliate and intimidate the security guards due to his affiliations and the culture of gang criminal behavior." Price moved to exclude

the evidence on grounds its probative value, if any, was outweighed by its prejudicial effect.

At arguments on the motions, Price's counsel objected to admission of testimony concerning Price's documented gang member status, arguing Price was not provided due process as the documentation oftentimes is done without a person's knowledge. Counsel pointed out there was no gang connection to the victims, the location or why the incident started; that the occurrence was completely unrelated to any gang activity. He argued that the reference to June 8 "would be to paint the picture of a day of mayhem or just a lawless day," and unfairly depicted his client as a "monster" on that day. He argued Facebook posts showing his client throwing gang signs shed an unfairly prejudicial light on Price. The People acknowledged they did not allege a section 186.22 gang allegation because no gang rivals were involved. The prosecutor argued, however, that "the gang mentality, the gang connection, that association and that sense of needing to ban together to retaliate in obligation to one another is what makes it relevant." She argued it was evidence that "helps to explain really the unexplainable" to the jury.

The court granted the motion, finding the gang evidence had "some significant probative value" on motive and intent that was not outweighed by its prejudicial effect in misleading or confusing the jury, or prolonging the trial. In response to further argument from codefendant Hune's counsel, the court explained it would not permit the expert to opine that on the particular day Hune had a certain intent or motive, but it was proper for the expert to testify that the gang allegiance meant individuals had a sense of obligation to help fellow gang members or associates under certain circumstances.

At trial, San Diego Police Department Detective Joseph Castillo, a gang detective responsible for monitoring the East Side/Skyline Piru and O'Farrell Park Banksters street gangs, testified about the Skyline and O'Farrell Park gangs' history and territory, as well as the importance of respect and loyalty in the gang culture. Detective Castillo testified that the two gangs were allies: the same gang with different boundaries. He explained that based on the significance of the numbers 6 and 8, June 8 was a Skyline and O'Farrell Park gang "holiday" on which the members would have parties or barbeques. Detective Castillo testified that in June 2018, Price was a Skyline gang member going by the moniker Baby AB. The detective identified Price and others, including Jordan Bingham, in photographs throwing gang signs. Detective Castillo testified that Hune was known to be an O'Farrell Park gang associate going by the moniker YG Boolin or Boolin YG. The detective

recalled that in October 2017, he and his partner had seen Hune driving a black Chrysler 300.

The prosecutor gave Detective Castillo a hypothetical, asking him if a Skyline gang member would feel disrespected if he were at a bar and got into a fight but was on the losing end, and then was beaten up and physically ejected by security guards. The detective responded that "[w]ithout a doubt" he would feel disrespected and would be expected to do something as a gang member to retaliate or else be chastised as a "buster"—a gang member unwilling to commit crimes. When asked whether an accompanying gang member who ran away when his colleague got beat up by security guards would have a bigger concern about respect among his gang members, Detective Castillo testified that he also would be expected to retaliate. The disrespect would be more intensified if the incident occurred on the gang "holiday." The detective also agreed that if an O'Farrell Park gang associate was getting beaten up and was accompanied by a Skyline gang member, the Skyline gang member would be expected to back him up, or also get involved in the fight. If the gang member ran away from the fight, he could be in a position of getting beat up by the gang or worse, for not helping out.

[. . .]

At trial, the People called A.T., one of the security guards present during the shooting. A.T. was working at the bar and observed the aftermath of the fight and Price and his group's exit. However he was unable to identify Price as one of the men involved in the fight. Afterwards, outside the jury's presence, the prosecutor asked A.T. if he had messaged an investigator about his belief that the defendants were from Skyline or O'Farrell, and he explained the investigator had told him the defendants were from those gangs and if anything happened, they could do witness protection.

Afterwards, the prosecutor asked the court to pursue that issue before the jury as going to A.T.'s "state of mind as to why he is being hesitant to identify anyone." Hune's counsel responded: "If she goes into it, then I think we can go into how he received that information." The court said, "Well, of course," and he replied, "No problem." The prosecutor thereafter asked A.T. whether he was reluctant to call the investigator back, and he confirmed he "didn't want to be involved." She asked: "Do you have any concerns for your personal safety coming to court to testify?" A.T. responded: "Well, I mean, [the investigator] had mentioned that the guys were possibly gang members and . . . the paperwork alone says you are reporting to the gang part of the court,

and then—the gang prosecution part, you know. So that's a little, you know, odd, makes you not want to really show up. And then he also said, you know, we are not worried about it but we can offer witness protection and things if it seems like something might happen. So once people start saying those kind of things, yeah, it does make you concerned. I have kids that are with me all the time."

See Doc. No. 9-26 at 4-10, 26-27 (footnotes omitted).

In closing arguments, the prosecutor explained that the defendants had a particular mentality that caused them to retaliate against the guards: "People get kicked out of bars every weekend, probably every day in this city, but they don't return to that bar and open fire on the security guards who have ejected them. It takes a person with a particular mentality to choose that response, a person who comes from a world where retaliation is the type of response that's warranted in that circumstance, a world and a mentality that is shared by these two defendants, a world where the retaliation in the form of returning to that bar and opening fire is not only the expected response, it's the revered response." She explained that motive was "huge" and could be explained by the fact that defendants were on the losing end of the fight, got "pummel[ed]" and manhandled by the guards, and it occurred on their gang celebration day. The prosecutor argued she established defendants committed the crimes not only with evidence of their "shared mentality," but also other direct and circumstantial evidence: the video surveillance evidence and the timeline of events, partly established by the cell phone activity after the fight.

As to the evidence of "gang activity," the court gave the jury instructions that it could consider the evidence on the defendants' intent to kill or Hune's intent to aid Price, their motive to commit the offense, and Hune's knowledge that Price intended to commit the crime. It instructed that the evidence could be considered "when you evaluate the credibility or believability of a witness . . . ." The instruction reads: "You may not consider this evidence for any other purpose" or "conclude from [it] that the defendant is a person of bad character or that he has a disposition to commit crime."

See Doc. No. 9-26 at 9-10 (footnotes omitted). The jury convicted petitioner on all counts. See Doc. No. 9-2 at 52-64.

## II. POST-TRIAL PROCEDURES

On September 19, 2019, the trial court entered an abstract of judgment sentencing petitioner to an indeterminate term of 96 years to life. Doc. Nos. 9-3 at 23-26; 9-26 at 3.

Petitioner noticed his direct appeal on October 10, 2019. Doc. No. 9-3 at 27-28. On March 5, 2021, the California Court of Appeal issued an opinion directing the trial court to correct a sentencing error (not at issue in the proceedings before this Court), but it otherwise affirmed the judgment. Doc. No. 9-26 at 30-31. That court expressly rejected the due process claims petitioner raises in this habeas corpus proceeding as to the admission of the gang evidence and the evidence related to the witness's reluctance to testify. *See id.* at 20, 25-26. In his briefing to the Court of Appeal, petitioner made conclusory assertions of a federal due process violation arising from the lay opinion testimony that petitioner matched the description of the shooter captured in security footage. *See* Doc. No. 9-23 at 65. Although the Court of Appeal's opinion does not directly address any constitutional issues raised by the opinion testimony, the claim was nonetheless denied on various other grounds. *See generally* Doc. No. 9-26 at 20-24.[1] On May 26, 2021, the California Supreme Court denied the petition for review without reaching the merits. Doc. No. 9-28. Petitioner timely filed the instant Petition. *See* Doc. No. 3 at 46, 49.

## III. STANDARD OF REVIEW

Federal habeas relief is available to an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). This Court may not issue a writ of habeas corpus based solely on alleged error of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). A court will only entertain a writ of habeas corpus on behalf of a state court prisoner if the federal claims have been adjudicated on the merits in state court. 28 U.S.C. § 2254(b)-(c). A state court adjudication may be overturned if it "resulted in a decision that was contrary to, or involved an unreasonable application of,

---

[1] It does not matter, for purposes of this Court's review, if the Court of Appeal articulated its reasoning for denying petitioner's due process claim, which was obliquely raised in his brief, because silent denial of a federal claim is presumed to be an adjudication on the merits, particularly where a petitioner's efforts to raise the issue before the state court are weak or insubstantial. *See Johnson v. Williams*, 568 U.S. 289, 298-301 (2013).

clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). This "standard is intentionally difficult to meet," and it incorporates "a presumption that state courts know and follow the law," which makes federal habeas review "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citations and internal quotation marks omitted).

Petitioner must first identify the "clearly established" federal law at issue. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013); *Robertson v. Pichon*, 849 F.3d 1173, 1182 (9th Cir. 2017). Only the direct holdings of the Supreme Court, not its dicta, are "clearly established" for purposes of the statute. *Woods*, 575 U.S. at 315; *Robertson*, 849 F.3d at 1182. The holdings of circuit courts cannot constitute "clearly established" federal law if the Supreme Court has not itself announced a clear rule. *See Lopez v. Smith*, 574 U.S. 1, 6 (2014); *Robertson*, 849 F.3d at 1182. If there is no directly controlling Supreme Court precedent, habeas relief will be unavailable to the petitioner because the law is not "clearly established." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008); *Robertson*, 849 F.3d at 1182.

If petitioner can identify "clearly established" law, he must also demonstrate the state court made "an unreasonable application" of federal doctrine, "not merely [a] wrong" application, and "even clear error will not suffice." *Woods*, 575 U.S. at 316 (citations and internal quotation marks omitted). To justify habeas relief "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *accord Robertson*, 849 F.3d at 1182.

Should petitioner cross the high hurdles of both identifying a "clearly established" law and showing the state court's ruling is sufficiently outré as to constitute error susceptible to habeas review, petitioner must further demonstrate any error was prejudicial under the standard announced by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *Merolillo v. Yates*, 663

F.3d 444, 454-55 (9th Cir. 2011). Under that standard, "[h]abeas relief is warranted only if the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Merolillo*, 663 F.3d at 454 (citing *Brecht*, 507 U.S. at 637-38). This Court's review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). This Court will "look through" any summary denials to the "last reasoned opinion" issuing from the state judiciary. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991)). Because the California Supreme Court denied review without comment, this Court will "look through" to the decision of the California Court of Appeal.

## IV. PETITIONER HAS SHOWN NO DEPRIVATION OF FEDERAL CONSTITUTIONAL RIGHTS

Petitioner alleges three separate categories of evidence were erroneously admitted at trial, each of which violated his due process rights: (1) evidence of petitioner's gang ties; (2) opinion evidence that petitioner was the shooter captured on security camera footage; and (3) evidence related to a witness's reluctance to testify. *See* Doc. No. 3 at 6, 28, 33; Doc. No. 8-1 at 2. Respondent argues the second and third grounds are procedurally defaulted, and, in any event, all three grounds are meritless. Doc. No. 8-1 at 9-16. This Court will address procedural default before reaching the merits.

### (A) The Court Need Not Determine Whether the Second and Third Grounds are Procedurally Defaulted *Unless* Petitioner's Claims Have Merit

Respondent argues the opinion evidence and evidence of the witness's reluctance to testify was admitted at trial without objection from petitioner, which renders those claims procedurally defaulted in this Court. Doc. No. 8-1 at 9-10. The procedural default doctrine precludes habeas relief where an "independent and adequate" state law procedural rule supported the state court judgment against the petitioner. *See Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The state law rule is "independent" if it is not interwoven with federal law, and it is "adequate" if it is clear and consistently applied by the state courts. *See Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011). If the state court both relies

on an adequate and independent state procedural law *and* reaches the merits on an appeal, the procedural default will still stand if the state court expressly indicates the state procedural bar is in and of itself sufficient to bar relief to the petitioner. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). A petitioner may nonetheless be excused from a procedural default if there was cause for the default and actual prejudice. *Fairbank*, 650 F.3d at 1257.

California's "contemporaneous objection" rule is generally considered an adequate and independent ground to deny federal habeas relief. *See Fairbank*, 650 F.3d at 1256-57; *Jackson v. Giurbino*, 364 F.34d 1002, 1005-07 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Here, the Court of Appeal clearly and unambiguously held petitioner forfeited the second and third grounds for relief because of his failure to object at trial, although it nonetheless reviewed the merits of those claims because they also related to his claim of ineffective assistance of counsel. *See* Doc. No. 9-26 at 21, 25. The question before this Court thus becomes, should petitioner now be excused from that forfeiture based on a showing of cause and prejudice?

When determining whether "cause" exists, the Supreme Court has noted that trial counsel's failure to preserve an issue for appellate review can constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446 451-54 (2000). Respondent acknowledges as much, but at the same time urges this Court to find the claim of incompetence as cause is itself procedurally defaulted. *See* Doc. No. 8-1 at 10-11. But this procedural consideration creates a kind of chicken-and-egg problem on the facts of this case. The Court of Appeal held trial counsel's failure to object was not ineffective because the evidence at issue was admissible, and counsel cannot therefore be faulted for failing to impose a futile objection against admissible evidence. *See* Doc. No. 9-26 at 26-27. But this argument cannot hold water if the Court of Appeal was incorrect when it concluded the evidence was admissible. Although this Court cannot review the Court of Appeal's rulings on the state law issues of whether the evidence was relevant and admissible under the California Evidence Code, this Court can determine whether the Court of Appeal unreasonably applied federal law. If the trial court's admission of evidence amounted to an

unreasonable violation of due process as petitioner claims, then counsel's objection ***would have*** been meritorious if timely asserted because the evidence would have been excluded under federal law. Thus, this Court cannot decide the specific issue of whether petitioner has cause to be excused from his default without first deciding the merits of the underlying constitutional questions.

The issue is yet more fraught. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sharply circumscribes this Court's power to review the state court's application of federal law because it accords great deference to the state court's interpretation of federal law. *See* 28 U.S.C. § 2254(d)(1); *Woods v. Donald*, 575 U.S. 312, 316 (2015). If petitioner's counsel had in fact objected at trial and had presented constitutional questions squarely to the state judiciary, those courts would have had greater latitude to rule on the issue, and they might indeed have reached a different result because their decision would not be constrained by the AEDPA's deferential standard of review. *See Franklin*, 290 F.3d at 1233. On top of that, this Court would then have to determine if the grounds for cause were themselves procedurally defaulted.

As the Ninth Circuit has noted, "[p]rocedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." *Id.* (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Moreover, procedural default is a matter of comity, not of jurisdiction. *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992). Therefore, this Court can review the merits of the Petition before passing judgment on the question of procedural default. A review of the merits of this case is accordingly necessary, and it might also render the question of procedural default moot if the claims in fact lack merit. This Court therefore recommends the District Court abstain from deciding the issue of procedural default in this case unless and until there is a viable claim on the merits that might be procedurally defaulted. *Cf. Vansickel*, 166 F.3d at 956-58 (resolving the merits prior to addressing procedural default).

////

### **(B) Notwithstanding the Question of Procedural Default, None of Price's Three Grounds for Relief Have Merit**

Petitioner generally alleges the admission of three categories of evidence—gang evidence offered to explain his motive for the shooting, opinion evidence that he matched the description of the shooter captured on security footage, and testimony showing a witness was reluctant to testify—violated his due process right to a fair trial. *See* Doc. No. 30 at 6, 28, 35. In his briefing to the Court of Appeal, petitioner suggested a due process violation may occur when a trial court allows the introduction of evidence that is "more prejudicial than probative." *See* Doc. No. 9-23 at 50-51 (citing *United States v. Lemay*, 260 F.3d 1018, 1026-27 (9th Cir. 2001)). Petitioner frames the issue in the abstract because he cannot cite a Supreme Court case in which the Court expressly held the admission of ***any*** of the evidence here, all of which was admitted as relevant under state evidence law, violates due process because the Supreme Court has never issued such a decision. Respondent counters that state law evidentiary rulings do not implicate federal law ***at all***, which "precludes relief for Price's three claims." Doc. No. 8-1 at 13. The truth, as it so often does, lies in the middle.

Prior to the enactment of AEDPA, the Ninth Circuit issued at least one decision holding due process could be violated when prejudicial evidence of zero relevance was admitted at trial. *See McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993). But "[t]hat decision is no longer valid after AEPDA, which now requires that the state . . . court's decision violate clearly established Supreme Court law as a prerequisite for habeas relief." *See Torres v. Barnes*, C 11-1804 SBA (PR), 2014 WL 4652400, 2014 U.S. Dist. LEXIS 132801, at *28-29 (N.D. Cal. Sept. 18, 2014). Although Petitioner does not cite to *McKinney*, perhaps knowing it no longer counts as good law, he nonetheless invokes *McKinney*'s doctrinal pronouncement in spirit if not in name.

The Supreme Court has imposed a much stricter standard for this type of due process claim in habeas cases, noting the introduction of evidence in a criminal trial can only violate due process when a trial is completely permeated with unfairness on account of the

introduction of the evidence. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991); *Lisenba v. California*, 314 U.S. 219, 228 (1941). Petitioner is thus correct to the extent he contends evidentiary error at trial can, in an appropriate case, give rise to a due process violation. He advocates for the wrong rule, however, by treating it as a simple matter of weighing probative value against the risk of prejudice as a trial court might do under Federal Rule of Evidence 403. Respondent's position, that a total lack of Supreme Court precedent completely forecloses review in this case, is likewise overly harsh because the Court has provided a broad standard under which due process can limit the introduction of evidence in a criminal trial. This Court concludes the standard set forth by the Supreme Court, although broad in application, is sufficiently clear that it embraces the issues in this case.

Under that standard, the Supreme Court has held that prior bad acts evidence, when offered to show motive or identity, does not violate due process in a criminal trial. *See Estelle*, 502 U.S. at 75; *Dowling v. United States*, 493 U.S. 342, 352-54 (1990); *see also Kipp v. Davis*, 971 F.3d 939, 951 (9th Cir. 2020) ("The Supreme Court found no due process violation where other acts evidence was properly admitted . . . ."). *Kipp* is particularly instructive here because in that case the trial court admitted evidence showing the defendant had been previously charged with—and acquitted of—rape and murder in another case, which the prosecution contended was relevant to prove the defendant's identity and intent under the same state evidentiary code at issue in this case. *See Kipp*, 971 F.3d at 944-45. If such damaging evidence could be admitted without a due process violation in *Kipp*, then the gang evidence in this case, which was properly offered as a matter of state law to explain petitioner's motive for the shooting, and which is less inflammatory than the evidence offered against the defendant in *Kipp*, likewise fails to violate due process.

As to the opinion evidence of petitioner's identity, the Court of Appeal concluded the evidence was admissible under state evidence law because it "aided the jury in determining the critical issue of [petitioner's] identity." *See* Doc. No. 9-26 at 23. Petitioner makes no attempt to explain how the evidence could have caused his trial to be so

permeated with unfairness that a due process violation occurred, as he merely reiterates his arguments vis-à-vis the admissibility of the testimony under state evidence law. Doc. No. 3 at 27-33. This Court cannot revisit the state law evidentiary rulings, and, after reviewing the record, nothing about the California Court of Appeal's resolution of the issue strikes this Court as contrary to clearly established federal law or based on an unreasonable application of the same. Accordingly, this Court discerns no due process violation caused by admission of the opinion evidence.

As to the evidence showing a witness, specifically one of the security guards present during the shooting, was afraid to testify, petitioner asserts the admission of that evidence in this case violated due process as explained by the Seventh Circuit in *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir. 1988). This Court first notes a pre-AEDPA, out-of-circuit case, which may have been persuasive to a state appellate court writing on a blank slate, certainly does not constitute the "clearly established" federal law this Court requires for finding a violation of section 2254. In any event, *Dudley* was a case in which the prosecution, right out of the gate and before the witness's credibility had been placed at issue, elicited testimony that a witness had received threatening, anonymous phone calls the night before the trial, which were not linked to the defendant by anything other than "prejudicial innuendo." *See Dudley*, 854 F.2d at 969. The prosecution in this case only offered evidence of the witness's reluctance to testify ***after*** he had already testified at great length and ***after*** he had expressed a reluctance to testify about the identity of the shooter. *See generally* Doc. No. 9-14 at 31-74. The trial court further allowed the defense to ameliorate any prejudice from the introduction of the witness's testimony by exploring the source (i.e., law enforcement) of the witness's knowledge of petitioner's gang affiliations. *Id.* at 70-74.

The cases differ in another respect. In *Dudley*, the prosecution had suggested to the jury the defendant, or someone acting in concert with the defendant, had directly threatened the witness. *See Dudley*, 854 F.2d at 969. In this case, the witness instead testified he had learned of petitioner's gang ties, and he was hesitant to testify in a gang case in general.

*See* Doc. No. 9-14 at 77. *Dudley* was therefore a case in which the jury might have been tainted by an inference the defendant was the sort of person who would threaten and intimidate a witness, whereas this is a case in which the witness's potential fear was not based on anything particular to petitioner. His fears would instead hold true in *any* case where the defendant had gang affiliations. This Court therefore concludes it is not "unreasonable" or "contrary" within the meaning of the AEDPA for the Court of Appeal to have concluded there was no due process violation in petitioner's trial.

## V. CONCLUSION, RECOMMENDATION, AND ORDER

Each of the three grounds for relief alleged in the Petition lack merit. It is accordingly unnecessary for the Court to determine whether any of the claims were procedurally defaulted. This Court accordingly **RECOMMENDS** the District Court **DENY** the Petition in its entirety. The Court **ORDERS** any objections to this Report and Recommendation be filed by **June 1, 2023**, and any responses to such objections be filed within **fourteen (14) days of the filing of any objections**.

Dated: May 2, 2023

Hon. Karen S. Crawford
United States Magistrate Judge