1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

MARCEL DESEAN PRICE,

Plaintiff,

12

13

v.

14

SEAN MOORE et al.,

Defendant.

15

16

17

Case No.:  22cv775-GPC(KSC)

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING AND DISMISSING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

18

19

20

21

22

23

24

25

26

On July 13, 2023, Petitioner Marcel Desean Price ("Petitioner"), a state prisoner proceeding *pro se*, filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in San Diego Superior Court Case No. SDC237121.  (Dkt. No. 3, Am. Pet.[1])  Respondent filed an Answer and Notice of Lodgment on November 17, 2022.  (Dkt. Nos. 8, 9.)  Petitioner did not file a Traverse. On May 2, 2023, Magistrate Judge Karen S. Crawford issued a Report and Recommendation ("Report") that this Court deny the Petition.  (Dkt. No. 21.)  Petitioner did not file an objection.

27

28

---

[1] The original petition was filed on May 26, 2023.  (Dkt. No. 1, Pet.)

1

After careful consideration of the pleadings and relevant exhibits submitted by the parties, the Court ADOPTS the Magistrate Judge's Report denying the amended petition for writ of habeas corpus, and DENIES a certificate of appealability.

### Procedural Background

On June 21, 2019, a jury convicted Petitioner of three counts of attempted willful, deliberate, and premeditated murder in violation of California Penal Code ("Penal Code") sections 187(a), 189, and 664(a), three counts of assault with a firearm in violation of Penal Code section 245(a)(2), and one count of possession of a firearm by a felon in violation of Penal Code section 129800(a)(1).  (Dkt. No. 9-2, Lodgment No. 2 at 262-74.[2])  The jury also found true several firearm and great bodily injury enhancement allegations pursuant to Penal Code sections 12022.5(a); 12022.53(b)-(d), and 12022.7(a). (*Id.*)

On September 6, 2019, Petitioner was sentenced to an indeterminate term of seven years to life on each of the attempted murder convictions, plus a consecutive term of 25 years to life on the firearm enhancement and a stay was imposed on the other convictions and enhancements for an aggregate prison term of 96 years to life.  (Dkt. No. 9-2, Lodgment No. 2 at 390-92.)

Petitioner filed an appeal on October 23, 2019.  (*Id.* at 327-28.)  On March 5, 2021, the Court of Appeal affirmed the judgment but remanded with direction that the trial court correct the abstract of judgment to reflect that the correct sentence on counts 1, 2, and 3 is life with the possibility of parole and not seven years to life.  (Dkt. No. 9-26, Lodgment No. 24.)  Petitioner filed a petition for review with the California Supreme Court which was denied on May 26, 2021.  (Dkt. No. 9-27, Lodgment No. 25; Dkt. No. 9-28, Lodgment No. 26.)

---

[2] Lodgment page numbers are based on the state court's pagination.

On December 31, 2020, Petitioner filed a motion for resentencing under the new sentencing reform legislation of 2018 seeking to strike the 75 years for gun enhancements.  (Dkt. No. 9-31, Lodgment No. 29.)  On January 22, 2021, the Superior Court of San Diego denied the motion for resentencing for lack of jurisdiction because the case was on appeal.  (Dkt. No. 9-32, Lodgment No. 30.)

On March 3, 2021, Petitioner filed a petition for writ of habeas corpus with the Court of Appeal concerning the Superior Court's denial of his motion for resentencing.  (Dkt. No. 9-29, Lodgment No. 27.)  On March 9, 2021, the Court of Appeal denied the petition of writ of habeas corpus.  (Dkt. No. 9-30, Lodgment No. 28.)

On May 26, 2022, Petitioner filed a petition for writ of habeas corpus in this Court.  (Dkt. No. 1, Pet.)  On July 13, 2022, an amended petition was filed.  (Dkt. No. 3.)

**Factual Background**

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness).  Petitioner has not challenged the state court's findings of fact.  Thus, the following facts are taken from the unpublished California Court of Appeal opinion.  (Dkt. No. 9-26, Lodgment No. 24; *see also People v. Price*, 2021 WL 834793 (Ct. App. Mar. 5, 2021).)

> During the night of June 8, 2018, and the early morning hours of June 9, 2018, Price, a Skyline (also known as East Side) Piru gang member, and three other men, two of whom were associated with the O'Farrell Park gang, were at a North Park bar drinking and socializing when Price and one of his companions, Ted Mercer, got into an altercation and fight with others. Mercer was associated with the O'Farrell Park gang. A security guard heard Mercer say, "Fuck you and Fuck East Side," before the initial punch. Afterwards, Mercer yelled that they had gotten "maxed out," meaning they got beat up or lost the fight. He was injured and angry, feeling that the bouncers had thrown him back into the fight.

3

When the fight was over, security guards would not let Price or Mercer back into the bar. When Price and Mercer tried to reenter, two of the guards grabbed Price and tried to flip him over a railing. Mercer slapped one of the guards and the guard responded by punching him a few times in the face. Price and Mercer finally left the bar with their group, angry about what had happened there. While in the car driving away from the bar, Mercer exchanged calls with Hune using the phone of a friend who was at the bar that night.

At about 2:50 a.m., two of the security guards were standing outside the bar when they heard gunshots. One of the guards was shot in the upper chest area. Witnesses hearing the gunshots saw a black Chrysler 300, later determined to be registered to Hune, speeding down an adjacent street. One witness saw an individual run into the car after the gunshots and described him as an African-American male, five feet nine inches to six feet one inch tall, with a medium build on the slender side, wearing baggy clothes and a dark sweatshirt with a hood over his head.[3] The man appeared to be shoving something inside his waistband.

San Diego Police Department Detective Andrew Tafoya was assigned to the matter. He contacted the bar's manager and sought out surveillance video from surrounding businesses. He identified the men in the bar video by asking a gang unit detective if she recognized the men from the bar that night, and from that he was able to identify Price and Jordan Bingham. Detective Tafoya also viewed surveillance footage from the bar on June 8 showing Price and his colleagues entering the bar and the fight that ensued. The video showed the clothing and shoes Price was wearing that night. Detective Tafoya obtained surveillance footage from other local businesses that showed a black Chrysler 300 pull up and a male exit the car and commit the shooting, which occurred around 2:52 a.m. The video showed the vehicle pull up at 2:51 a.m. and a man exit the passenger side within 10 seconds. It also showed the first six numbers of the car's license plate, leading to records establishing that the car was Hune's. Detective Tafoya compared still photographs of the surveillance footage from the bar with the other business, and testified based on the similarities in clothing and shoe markings, as well as Price's height, stature and gait, that he believed the male who exited the

---

[3] Price fit this description, as he is six feet one inch tall and weighed 165 pounds around the time of his sentencing.

1
2   Chrysler 300 was Price.[4] The detective also obtained a photograph from
    Jordan Bingham's Facebook page showing Bingham and Price together
3   on June 8, throwing what appeared to be gang signs.

4   Officers arrested Price about 12 days after the shooting. In a jail
5   telephone call later that month, Price told the call recipient, "I'm done."
    Though he said he "didn't do nothing," he also said he had "fucked up"
6   and was "fucked right now . . . but it's my fault. The only person I'm mad
    at is me. I'm not upset with nobody else but myself." The Chrysler 300
7   was later located in the Rancho Cucamonga area.

8
9   *Price*, 2021 WL 834793, at *2-3.

10                                **Discussion**

11  **A.    Standard of Review of Magistrate Judge's Report and Recommendation**

12          In reviewing a magistrate judge's report and recommendation, a district court

13  "must make a de novo determination of those portions of the report . . . to which

14  objection is made" and "may accept, reject, or modify, in whole or in part, the findings or

15  recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.

16  72(b); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

17          Where a party fails to object, however, the court is not required to conduct "any

18  review at all . . . of any issue that is not the subject of an objection."  *Thomas v. Arn*, 474

19  U.S. 140, 149 (1985) ("We are therefore not persuaded that the statute positively requires

20  some lesser review by the district court when no objections are filed."); *United States v.*

21
22  _____

23  [4] The detective testified about Price's clothing depicted in the bar footage: "[A]round the waist area
24  going down appearing [sic] to be an identical match to the pants and shoes that are seen on the video
    from [the neighboring business]. Just the bulkiness of the pants around the thigh area and then it comes
25  down and slims down some and then kind of goes straight down. And the shoes, the description of the
    shoes being an Adidas shoe, like a mesh material almost with, like, a plastic three stripe for the Adidas
26  logo on the sides." When asked what he noticed when he compared the two portions of video, he said:
    "Just the bagginess or lack thereof around the leg area, the thigh. It appeared to be similar. It wasn't a
27  baggie, it wasn't a super-tight fit. And then as you come down the leg, again, it's more like a fitted look
    than a baggie or skinny jeans. And then as you keep going down, just the way the pants sit on the shoe
28  and then the actual shoe itself."

*Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise"); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, de novo review of a R&R is only required when an objection is made to the R&R") (citing *Reyna-Tapia*, 328 F.3d at 1121); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (interpreting Ninth Circuit's decision in *Reyna–Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection").  Here, Petitioner did not file an objection.

**B.    Standard of Review**

The petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.  Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be [objectively] unreasonable."  *Id.* at 409, 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (unreasonable application must be objectively unreasonable).  In other words, relief is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  This is an extraordinarily deferential standard of review.  *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision."  *Lockyer*, 538 U.S. at 71-72.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  A state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law.  *Id.*

## C.   Procedural Default

Respondent argues that Ground Two, regarding the detective's identification testimony, and Ground Three, challenging a witness' testimony about his reluctance to testify, are procedurally defaulted because Petitioner failed to raise these objections at trial and the Court of Appeal held that he forfeited these claims by failing to object at trial and preserving them for appeal.  (Dkt. No. 8-1 at 9.)

"Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."  *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir.

2002) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (stating that where it is easier to resolve a petitioner's claims on the merits, the interests of judicial economy counsel against deciding the often more complicated issue of procedural default)).  Here, the Court finds the interests of judicial economy support denying the claim on the merits without determining whether Grounds Two and Three have been procedurally defaulted.  *See Harris v. California Dep't of Corrections and Rehabilitation*, Case No. CV 20-6935-RGK (JEM), 2023 WL 2191367, at *17 (C.D. Cal. Jan. 18, 2023) ("Federal courts may address allegedly defaulted habeas claims on the merits if the lack of merit is clear but the procedural default issues are not.").  Thus, the Court addresses the merits of the habeas petition.

## D.     Right to Fair Trial under the Due Process Clause

Petitioner alleges that his due process rights to a fair trial were violated when 1) irrelevant and prejudicial evidence about his gang membership and other gang evidence was admitted against him in a "non-gang" case, (Dkt. No. 3, Am. Pet. at 6-27[5]); 2) when a detective offered lay opinion testimony on surveillance videos on the issue of Petitioner's guilt, (*id.*, Am. Pet. at 28-33); and 3) when the prosecution elicited testimony from a witness about his fear of testifying at trial because the defendant was a gang member, (*id.*, Am. Pet. at 33-39).[6]  Respondent argues that challenges to state court evidentiary rulings provide no basis for federal habeas relief, there is lack of controlling precedent by the United States Supreme Court, and Petitioner's claims are without merit pursuant to the re-litigation bar under § 2254.  (Dkt. No. 8-1 at 9-16.)

Petitioner's claims concern the alleged admission of prejudicial and propensity evidence during his state court trial.  As a starting point, "federal habeas corpus relief does not lie for errors of state law", *Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) (quoting

---

[5] Page numbers in the parties' briefing are based on the CM/ECF pagination.

[6] The Court notes that the arguments raised are identical to the arguments raised before the California Supreme Court and almost identical to the opening brief with the Court of Appeal.  (*See* Dkt. No. 9-27, Lodgment No. 25; Dkt. No. 9-23, Lodgment No. 21.)

1  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)), and particularly federal habeas courts "do

2  not review questions of state evidence law." *Jammal v. Van de Kamp*, 926 F.2d 918, 919

3  (9th Cir. 1991).  A petitioner may not "transform a state-law issue into a federal one

4  merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389

5  (9th Cir. 1997).  Here, to the extent Petitioner's due process claims are based on state

6  evidence law, they must be denied.

7        Next, Petitioner alleges violations of his due process rights to a fair trial under

8  AEDPA based on allegedly prejudicial and propensity evidence.  Under AEDPA,

9  Petitioner must show that the state court's decision was contrary to "clearly established

10  Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

11  2254(d).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

12  of [the United States Supreme] Court's decisions." *Williams,* 529 U.S. at 412; *Andrade*,

13  538 U.S. at 75-76; *see Smith v. Patrick*, 508 F.3d 1256 (9th Cir. 2007) (discussing

14  meaning of "clearly established federal law"); *Greene v. Fisher*, 565 U.S. 34, 38 (2011)

15  (holding that "clearly established federal law" is the law in existence at the time the state

16  court adjudication under review is announced).

17        Petitioner has not identified any Supreme Court precedent addressing his

18  evidentiary due process claims.  Further, the Ninth Circuit has recognized that the

19  Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly

20  prejudicial evidence constitutes a due process violation sufficient to warrant issuance of

21  the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("even clearly

22  erroneous admissions of evidence that render a trial fundamentally unfair may not permit

23  the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal

24  law,' as laid out by the Supreme Court.");[7] *see Estelle*, 502 U.S. at 75 n.5 (leaving open

25

26  _____

27  [7] In *Holley,* the court recognized that under Ninth Circuit authority, the admission of evidence resulted
   in a trial that was fundamentally unfair but since there was not "clearly established" Supreme Court
28  precedent, it was without power to issue a writ.  568 F.3d at 1101 n.2.

whether admission of irrelevant evidence or prior crimes evidence could violate due process).  In addition, the Supreme Court has not addressed whether the admission of propensity evidence violates due process.  *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008), *cert. denied*, 555 U.S. 1117 (2009) (rejecting habeas petitioner's challenge to introduction of propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution); *Alberni v. McDaniel*, 458 F.3d 860, 867 (9th Cir. 2006), *cert. denied*, 549 U.S. 1287 (2007) ("The [due process] right [concerning the introduction of propensity evidence and the prosecutor's comments on them that Petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA. The district court did not err in denying [the] petition on due process grounds."); *Jennings v. Runnels*, 493 Fed. App'x 903, 906 (9th Cir. 2012), *cert. denied*, 135 S. Ct. 96 (2014) (the Supreme Court has not held that propensity evidence violates Due Process, and the "absence of Supreme Court precedent on point forecloses any argument that the state court's decision [denying challenge to admission of propensity evidence] was contrary to or an unreasonable application of clearly established federal law") (citation omitted).

More specifically on Grounds One and Three, Petitioner has not identified and the Court has not found any Supreme Court precedent addressing whether the admission of propensity or unduly prejudicial evidence concerning gang affiliation or gang evidence violates due process; thus, habeas relief is barred.  *See Pena v. Tilton*, 578 Fed. Appx. 695, 695 (9th Cir. 2014) (finding the state court's determination that admission of gang-related evidence did not violate the petitioner's due process rights was not contrary to clearly established federal law relying on *Holley*); *Mora v. Lynch,* No. CV 17-7143-MCS (AGR), 2021 WL 2791971, at *5 (C.D. Cal. Feb. 18, 2021), *report and recommendation adopted by* 2021 WL 4594297 (Oct. 6, 2021) (denying due process violation claim based on admission of gang evidence as there is no "clearly established law"); *Lewis v. Arnold*, Case No. CV 16-5714-CAS (JEM), 2019 WL 6188624, at *16 (C.D. Cal. Oct. 17, 2019), *report and recommendation adopted by* 2019 WL 6170724 (Nov. 19, 2019) (denying

1    federal habeas relief on claim that admission of gang evidence violated due process

2    because Supreme Court has not clearly held that admission of irrelevant or prejudicial

3    evidence violates due process so as to warrant federal habeas relief); *Bryant v. Foulk*, No.

4    2:13–cv–1750–MCE–GGH (HC), 2014 WL 5454224, at *9 (E.D. Cal. Oct. 29, 2014)

5    ("due process claim here does not support federal habeas relief under AEDPA because

6    the admission of evidence at trial regarding petitioner's gang membership, gang activities,

7    and a letter purportedly authored by petitioner did not violate any clearly established

8    federal law").  Because the Supreme Court has not addressed the three issues raised in the

9    petition, the Court concludes that the Court of Appeal decision did not unreasonably

10    apply Supreme Court precedent and DENIES the Petition.  *See also Greel v. Martel*, 472

11    Fed. Appx. 503, 504 (9th Cir. 2012) (under *Holley*, there is "no clearly established

12    federal law that admitting prejudicial evidence [admission of evidence of sexual

13    misconduct to show propensity] violates due process"); *Earle v. Paramo*, No. CV 18-

14    05279-JAK (AGR), 2021 WL 2270702, at *22 (C.D. Cal. May 14, 2021) ("[t]he absence

15    of Supreme Court holdings that admission of propensity or unduly prejudicial evidence

16    violates due process precludes relief under § 2254(d)").

17          Finally, even if the due process claims were not barred by AEDPA, Petitioner had

18    not shown a due process violation.  A due process violation occurs when the admission of

19    evidence "is so extremely unfair that its admission violates fundamental conceptions of

20    justice." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (concerning police

21    eyewitness identification).  "It is well settled that a state court's evidentiary ruling, even if

22    erroneous, is grounds for federal habeas relief only if it renders the state proceedings so

23    fundamentally unfair as to violate due process." *Demetrulias v. Davis*, 14 F.4th 898, 907

24    (9th Cir. 2021) (quoting *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999) and citing

25    *Jammal,* 926 F.2d at 919 ("[I]t is certainly possible to have a fair trial even when state

26    standards are violated . . .").   In the Ninth Circuit, "[o]nly if there are no permissible

27    inferences the jury can draw from the evidence can its admission violate due process."

28    *Jammal*, 926 F.2d at 920; *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir.), *cert. denied*,

510 U.S. 1020 (1993); *see also Estelle*, 502 U.S. at 70 (where the challenged evidence is relevant to an issue in the case, its admission cannot be said to have violated the defendant's due process rights).  "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"  *Jammal,* 926 F.2d at 920 (citation omitted).  The Court next considers each of Petitioner's claims.

### 1.    Admitting Irrelevant and Prejudicial Gang Evidence

Petitioner argues that his due process right to a fair trial was violated when the trial court allowed Detective Castillo, a gang expert, to testify about his gang membership and other gang evidence which was not relevant to any of the charges in the case.  (Dkt. No. 3, Am. Pet. at 6-27.)  Respondent maintains that the Court of Appeal properly held that there was no due process violation.  (Dkt. No. 8-1 at 13-14.)

The Court of Appeal held that Petitioner's federal due process rights were not violated because the gang-related evidence allowed the jury to draw permissible inferences as to Petitioner's motive and intent.  (Dkt. No. 9-26, Lodgment 24 at 20.)

> Before trial, when the case was proceeding against both Price and Hune, the People moved to admit evidence of Price's and Hune's gang affiliations and gang culture—specifically, among other things, the significance of June 8 as a day of celebration and the importance of respect—to prove motive, Price and Hune's shared intent, and knowledge. They argued that while motive was not an element of any crime, the gang evidence could be admitted as relevant to that issue and others such as identity and modus operandi. They also argued gang affiliation could be relevant to proving the codefendants' relationship with one another and their involvement in the charged crime. The People argued that the evidence was relevant to help explain why the defendants would react so violently to a "seemingly innocuous situation at a bar"; that in the present case, "there is no other explanation for the crime but the fact that Price felt the need to retaliate and intimidate the security guards due to his affiliations and the culture of gang criminal behavior." Price moved to exclude the evidence on grounds its probative value, if any, was outweighed by its prejudicial effect.
>
> At arguments on the motions, Price's counsel objected to admission of testimony concerning Price's documented gang member status, arguing Price was not provided due process as the documentation oftentimes is done

12

without a person's knowledge. Counsel pointed out there was no gang connection to the victims, the location or why the incident started; that the occurrence was completely unrelated to any gang activity. He argued that the reference to June 8 "would be to paint the picture of a day of mayhem or just a lawless day," and unfairly depicted his client as a "monster" on that day. He argued Facebook posts showing his client throwing gang signs shed an unfairly prejudicial light on Price. The People acknowledged they did not allege a section 186.22 gang allegation because no gang rivals were involved. The prosecutor argued, however, that "the gang mentality, the gang connection, that association and that sense of needing to ban together to retaliate in obligation to one another is what makes it relevant." She argued it was evidence that "helps to explain really the unexplainable" to the jury.

The court granted the motion, finding the gang evidence had "some significant probative value" on motive and intent that was not outweighed by its prejudicial effect in misleading or confusing the jury, or prolonging the trial. In response to further argument from codefendant Hune's counsel, the court explained it would not permit the expert to opine that on the particular day Hune had a certain intent or motive, but it was proper for the expert to testify that the gang allegiance meant individuals had a sense of obligation to help fellow gang members or associates under certain circumstances.

At trial, San Diego Police Department Detective Joseph Castillo, a gang detective responsible for monitoring the East Side/Skyline Piru and O'Farrell Park Banksters street gangs, testified about the Skyline and O'Farrell Park gangs' history and territory, as well as the importance of respect and loyalty in the gang culture. Detective Castillo testified that the two gangs were allies: the same gang with different boundaries. He explained that based on the significance of the numbers 6 and 8, June 8 was a Skyline and O'Farrell Park gang "holiday" on which the members would have parties or barbeques. Detective Castillo testified that in June 2018, Price was a Skyline gang member going by the moniker Baby AB. The detective identified Price and others, including Jordan Bingham, in photographs throwing gang signs. Detective Castillo testified that Hune was known to be an O'Farrell Park gang associate going by the moniker YG Boolin or Boolin YG. The detective recalled that in October 2017, he and his partner had seen Hune driving a black Chrysler 300.

The prosecutor gave Detective Castillo a hypothetical, asking him if a Skyline gang member would feel disrespected if he were at a bar and got

into a fight but was on the losing end, and then was beaten up and physically ejected by security guards. The detective responded that "[w]ithout a doubt" he would feel disrespected and would be expected to do something as a gang member to retaliate or else be chastised as a "buster"—a gang member unwilling to commit crimes. When asked whether an accompanying gang member who ran away when his colleague got beat up by security guards would have a bigger concern about respect among his gang members, Detective Castillo testified that he also would be expected to retaliate. The disrespect would be more intensified if the incident occurred on the gang "holiday." The detective also agreed that if an O'Farrell Park gang associate was getting beaten up and was accompanied by a Skyline gang member, the Skyline gang member would be expected to back him up, or also get involved in the fight. If the gang member ran away from the fight, he could be in a position of getting beat up by the gang or worse, for not helping out.

(Dkt. No. 9-26, Lodgment No. 24 at 7-9; *see also* Dkt. No. 9-1, Lodgment 1 at 38-48; Dkt. No. 9-7, Lodgment No. 5 at 217-18, 225-26; Dkt. No. 9-4, Lodgment No. 2 at 346; Dkt. No. 9-19, Lodgment No. 17 at 2333-63, 2345-46; 2349-51; 2359-61; 2383-84.)

At trial, the gang evidence was relevant to explain why Price had a violent reaction to what might otherwise appear to be a minor incident.  The importance of respect in gang culture, which was heightened on June 8, a gang "holiday", was relevant to Price's motive for the shooting as he would be expected to retaliate when Hune, an ally gang member, was beaten up; otherwise, he would be ostracized or get beaten up himself.  *See Windham v. Merkle*, 163 F.3d 1092, 1102-03 (9th Cir. 1998) (evidence of gang involvement properly admitted to show motive for participating in alleged crimes); *Davis v. Felker*, 558 F. Supp. 2d 1008, 1018 (C.D. Cal. 2008) (finding gang evidence properly admitted to show motive for seemingly random crime even when defendant faced no independent gang charges or enhancements).

Moreover, at the conclusion of the trial, the trial court provided a limiting instruction as to the limited purpose of the gang evidence.  The jury was instructed to use the "gang activity" evidence only for the limited purpose of determining Petitioner's "intent to kill" and "motive to commit" the crime and could be considered to evaluate the

1   credibility of the witness but could not be used for any other purpose or that the

2   defendant is a person of bad character or that he has a disposition to commit the crime.

3   (Dkt. No. 9-2, Lodgment No. 2 at 234.)  Therefore, because courts presume juries follow

4   the court's limiting instruction, *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir.

5   1995), in this case, the jury did not reach its verdict based on any impermissible

6   inferences.  *See Nguyen v. McGrath*, 323 F. Supp. 2d 1007, 1027 (N.D. Cal. 2004).

7       Because there were permissible inferences the jury could draw from the gang

8   evidence as to Petitioner's intent and motive for the shooting, Petitioner's due process

9   claim is without merit; therefore, the Court DENIES the petition for writ of habeas

10  corpus on Ground One.  *See Jammal*, 926 F.2d at 920.

11      **2.    Admission of Lay Opinion Testimony Relying on Surveillance Videos**

12          Petitioner next argues that his due process right to a fair trial was violated when the

13  trial court allowed Police Detective Tafoya to identify Petitioner as the shooter based on

14  surveillance videos.  (Dkt. No. 3, Am. Pet. at 28-33.)  Respondent maintains that the

15  Court of Appeal properly found that the foundational requirements for lay opinion

16  testimony were met, and, in any event, the jurors themselves watched the surveillance

17  videos.  (Dkt. No. 8-1 at 15-16.)

18          The Court of Appeal concluded that Detective Tafoya's testimony was proper lay

19  opinion testimony because it was rationally based on the witness' perception even when

20  he became familiar with Petitioner's appearance after the crimes occurred.  (Dkt. No. 9-

21  26, Lodgment No. 24 at 22-24.)  It also held that Detective Tafoya did not identify

22  Petitioner as the shooter or offer an opinion on whether he was guilty but identified

23  Petitioner as the individual exiting the vehicle.  (*Id.* at 24.)

24          At trial, Detective Andrew Tafoya testified about the identity of the persons in still

25  photos of surveillance videos taken from the Bluefoot Bar, the location of the shooting

26  incident, and video footage from a nearby jewelry store.  (Dkt. No. 9-17, Lodgment No.

27  15 at 1851, 1857.)  He identified the man on the video coming out of the passenger side

28  of the Chrysler 300 at the time of the shooting as Petitioner.  (*Id.* at 1857, 1876:21-

1877:19.)  Detective Tafoya compared the pants and shoes of Petitioner from the
Bluefoot Bar and from the jewelry store.  (*Id.* at 1876-77.)

As discussed above, the admission of evidence can violate due process "[o]nly if
there are no permissible inferences the jury can draw from the evidence can its admission
violate due process." *Jammal,* 926 F.2d at 920; *see also Estelle*, 502 U.S. at 70 (because
challenged evidence was "relevant to an issue in the case," its admission did not violate
due process).  In this case, because there existed an inference that the jury could draw
from Detective Tafoya's testimony identifying the person getting out of the Chrysler 300,
Petitioner has not shown a due process violation.  *See Adame v. Robertson*, Case No.
8:20-cv-02058-CJC (GJS), 2021 WL 1725520, at *8 (C.D. Cal. Mar. 17, 2021) (officer's
testimony that the petitioner was the man depicted in the Walgreens video was relevant
on the question of identity and the jury could draw a permissible inference from the
testimony); *Figueroa v. Baughman*, Case No. 2:17-cv-02032-BRO (SK), 2017 WL
6560059, at *2 (C.D. Cal. Oct. 6, 2017*), report and recommendation adopted by* 2017
WL 6557424 (Dec. 20, 2017) ("Just because, as Petitioner contends, the video quality
may have been unclear and the officers had limited prior contacts with him does not
render their testimony inadmissible or prejudicial.").

Moreover, the surveillance videos and still pictures were admitted into evidence
and the jury was instructed to either accept or not accept lay witness opinions as true and
give whatever weight it thinks is appropriate.  (Dkt. No. 9-2, Lodgment No. 2 at 228.)
Ultimately, the jury could compare and decide if Petitioner was the same man depicted
on both videos.  (Dkt. No. 9-1, Lodgment No. 1 at 101-02.)  Thus, the Court DENIES the
Petition on Ground Two.  *See Adame*, 2021 WL 1725520, at *8 (jury, under its
instructions, was to make its own determination on the question of identification and, in
doing so, to decide whether or not to credit the witness testimony on the issue; therefore,
officer's identification testimony did not prevent a fair trial); *Figueroa,* 2017 WL
6560059, at *2 (no due process violation because the credibility or weight of police
officers' identifications were to be assessed by the jury).

16

### 3.      Admission of Security Guard Witness' Testimony About Fear of Testifying

Lastly, Petitioner claims his due process right to a fair trial was violated when A.T., a security guard on the night of the incident, testified that he was reluctant to testify when he learned Petitioner was a gang member.  (Dkt. No. 3, Am. Pet. at 33-36.) Petitioner argues that A.T.'s fear had no relevance since there was no evidence he was threatened by Petitioner or that he was subject to retaliation.  (*Id.*)  Respondent disagrees. (Dkt. No. 8-1 at 16.)

The Court of Appeal held that Petitioner's claim for violation of his due process right to fair trial was without merit because the testimony that A.T. knew that Petitioner was a gang member was related and probative to explain his reluctance or fear of testifying and the credibility of his testimony when he failed to identify Petitioner.  (Dkt. No. 9-26, Lodgment No. 24 at 25-26.)

> At trial, the People called A.T., one of the security guards present during the shooting. A.T. was working at the bar and observed the aftermath of the fight and Price and his group's exit. However he was unable to identify Price as one of the men involved in the fight. Afterwards, outside the jury's presence, the prosecutor asked A.T. if he had messaged an investigator about his belief that the defendants were from Skyline or O'Farrell, and he explained the investigator had told him the defendants were from those gangs and if anything happened, they could do witness protection. Afterwards, the prosecutor asked the court to pursue that issue before the jury as going to A.T.'s "state of mind as to why he is being hesitant to identify anyone." Hune's counsel responded: "If she goes into it, then I think we can go into how he received that information." The court said, "Well, of course," and he replied, "No problem."
>
> The prosecutor thereafter asked A.T. whether he was reluctant to call the investigator back, and he confirmed he "didn't want to be involved." She asked: "Do you have any concerns for your personal safety coming to court to testify?" A.T. responded: "Well, I mean, [the investigator] had mentioned that the guys were possibly gang members and ... the paperwork alone says you are reporting to the gang part of the court, and then—the gang prosecution part, you know. So that's a little, you know, odd, makes you not want to really show up. And then he also said, you know, we are not worried

17

about it but we can offer witness protection and things if it seems like something might happen. So once people start saying those kind of things, yeah, it does make you concerned. I have kids that are with me all the time."

(Dkt. No. 9-2, Lodgment No. 24 at 24-25; *see also* Dkt. No. 9-14, Lodgment No. 12 at 1166:2-1167:14; 1172:17-1173:18; 1175:27-1176:19.)

Here, permissible inferences could be drawn from the gang related threat evidence concerning A.T.'s credibility and his reluctance to testify. *See Von Schert v. Warden*, Case No. SA CV 18-992 SJO (RAO), 2018 WL 5733751, at *7 (C.D. Cal. Sept. 27, 2018), *report and recommendation adopted by* 2018 WL 5734655 (Oct. 31, 2018) (because permissible inferences, concerning witness' credibility, could be drawn from the threat evidence, there was no due process violation) (citing *Britt v. Montgomery*, Case No. CV 16-06694-AB (AS), 2017 WL 2664210, at *15 (C.D. Cal. Feb. 22, 2017) (holding no due process violation where threat evidence was relevant to the issue of evaluating the witness's credibility); *Baldwin v. Adams*, 899 F. Supp. 2d 889, 907-08 (N.D. Cal. 2012) (holding no due process violation where evidence of threats from unidentified third party was used to show witness's state of mind, which was relevant to his credibility); *Padilla v. Jacquez*, No. EDCV 07-00353 DDP (SS), 2010 WL 2598130, at *8-9 (C.D. Cal. Apr. 8, 2010) (holding admission of evidence of anonymous threats made to witness was relevant to prove her credibility)).  Moreover, the jury was provided with limiting instructions concerning the gang evidence.  (Dkt. No. 9-2, Lodgment No. 2 at 234.)  As such, the trial court's admission of gang threat evidence did not render Petitioner's trial so "fundamentally unfair" as to violate due process.  *See Demetrulias*, 14 F.4th at 907.  Therefore, the Court DENIES the Petition on Ground Three.

**E.   Certificate of Appealability**

Rule 11 of the Federal Rules Governing Section 2254 Cases states, the district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).  To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and citation omitted).

In this case, Petitioner has not made a required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. *See id.*  Therefore, the Court DENIES a certificate of appealability.

## Conclusion

Based on the above, the Court ADOPTS the Report and Recommendation and DENIES and DISMISSES the amended petition for writ of habeas corpus.  The Court also DENES a certificate of appealability.

IT IS SO ORDERED.

Dated:  August 15, 2023

Hon. Gonzalo P. Curiel
United States District Judge

19

22cv775-GPC(KSC)